UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

|  |  |  |
|---|---|---|
| DAVID JOHN RODIUS, | ) | |
| | ) | |
| Petitioner, | ) | 2:07-cv-00602-KJD-LRL |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| D.W. NEVEN, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

This action is a petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, by David John Rodius, a Nevada prisoner represented by counsel. This action is before the Court for decision on the merits of the first amended petition (Docket #31).

I.  **Procedural History**

This petition involves a conviction resulting from events on January 1, 2003, when petitioner shot and killed his father at the family home, located in Henderson, Nevada. (Respondents' Exhibits A-C; Petition, Docket #31, at p. 8).[1] On April 13, 2004, petitioner pleaded guilty to second degree murder with the use of a deadly weapon. (Respondents' Exhibits D, E, F;

---

[1] The exhibits referenced in this order appear in the Court's record at Docket #11 and #32. Exhibits A-V at Docket #11, were submitted by respondents in support of their motion to dismiss. Exhibits 1-22 at Docket #32, were submitted by petitioner in support of the first amended petition. Respondents' Exhibits A-V and Petitioner's Exhibits 1-22 are largely duplicative of each other.

Petitioner's Exhibits 3, 4). Petitioner was sentenced to life in prison with the possibility of parole after ten years, and a consecutive life in prison with the possibility of parole after ten years for the weapon enhancement. (Respondents' Exhibit F; Petitioner's Exhibit 5). The judgment of conviction was entered on June 7, 2004. (Respondents' Exhibit H; Petitioner's Exhibit 6). Petitioner did not file a direct appeal. On February 4, 2005, petitioner filed a post-conviction habeas petition in state district court. (Respondents' Exhibit I; Petitioner's Exhibit 7). The state district court held an evidentiary hearing on December 9, 2005. (Respondents' Exhibit P; Petitioner's Exhibit 12). On January 6, 2006, the state district court issued its order denying the petition. (Respondents' Exhibit Q; Petitioner's Exhibit 13). Petitioner appealed the denial of his state petition. (Respondents' Exhibit R; Petitioner's Exhibit 15). On January 9, 2007, the Nevada Supreme Court issued its order affirming the denial of the state habeas petition. (Respondents' Exhibit U; Petitioner's Exhibit 22).

Petitioner submitted a *pro se* petition to this Court on May 3, 2007. (Docket #1). On March 20, 2008, respondents filed a motion to dismiss the petition. (Docket #10). The Court granted petitioner extensions of time, until December 7, 2008, to file a response to the motion to dismiss. (Docket #14 and #23). On December 1, 2008, Richard Schonfeld entered an appearance as petitioner's attorney of record. (Docket #24). On December 4, 2008, petitioner, through counsel, filed a response to the motion to dismiss. (Docket #26). On the same date, petitioner's counsel filed a motion for leave to file a statement of additional claims/request for permission to include case law and appendix, or in the alternative, motion for leave to file a memorandum of law in support of the petition. (Docket #25).

By order filed February 6, 2009, this Court denied respondents' motion to dismiss the petition. (Docket #29). In the same order, the Court granted petitioner's motion for leave to file an amended petition. (*Id.*). On March 18, 2009, petitioner, through counsel, filed an amended petition. (Docket #31). The amended petition raises three grounds:

> 1. Petitioner's Sixth Amendment right to the effective assistance of counsel was violated due to counsel's failure to adequately investigate his mental state as a result petitioner's guilty plea was not entered into knowingly, intelligently, and voluntarily as required by the United States Constitution.
>
>    A. Counsel was ineffective due to failure to investigate.
>
>    B. Petitioner suffered prejudice due to counsel's ineffectiveness.
>
> 2. Petitioner's guilty plea was entered in violation of his Sixth Amendment right to effective assistance of counsel, was not entered knowingly, intelligently and voluntarily, and was in violation of his right to a fair trial and due process of the law under the Fifth and Fourteenth Amendments to the United States Constitution, as demonstrated by his counsel's failure to adequately investigate petitioner's competency.
>
>    A. Counsel's failure to investigate petitioner's competency
>
>    B. The court's failure to properly canvass petitioner at his change of plea was harmful error which resulted in prejudice to petitioner's right to a fair trial.
>
> 3. Petitioner's Sixth Amendment right to effective assistance of counsel was violated when counsel's performance fell below a standard of objective reasonableness.

(Docket #31). Respondents filed an answer to the amended petition on April 17, 2009. (Docket #35). Petitioner filed a reply on May 8, 2009. (Docket #36).

**II.     Federal Habeas Corpus Standards**

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d), provides the legal standard for the Court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

3

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than merely incorrect or erroneous; the state court's application of clearly established federal law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

In determining whether a state court decision is contrary to, or an unreasonable application of federal law, this Court looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001).

1    Moreover, "a determination of a factual issue made by a State court shall be presumed
2 to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness
3 by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

**III.  Discussion**

   **A.  Exhaustion Argument**

Respondents argue that petitioner has not exhausted Ground One because it contains facts and legal theory that was not presented to the Nevada Supreme Court.  Specifically, respondents argue that petitioner's claim of having a delusion or hallucination that his father was coming at him with an axe and his responding delusional act of self-defense ("the axe scenario"), was not fairly presented to the Nevada Supreme Court.

   **1. Exhaustion Standard**

A federal court will not grant a state prisoner's petition for habeas relief until the prisoner has exhausted his available state remedies for all claims raised.  *Rose v. Lundy*, 455 U.S. 509 (1982); 28 U.S.C. § 2254(b).  A petitioner must give the state courts a fair opportunity to act on each of his claims before he presents those claims in a federal habeas petition.  *O'Sullivan v. Boerckel,* 526 U.S. 838, 844 (1999); *see also Duncan v. Henry,* 513 U.S. 364, 365 (1995).  A claim remains unexhausted until the petitioner has given the highest available state court the opportunity to consider the claim through direct appeal or state collateral review proceedings.  *See Casey v. Moore,* 386 F.3d 896, 916 (9th Cir. 2004); *Garrison v. McCarthey,* 653 F.2d 374, 376 (9th Cir. 1981).

A habeas petitioner must "present the state courts with the same claim he urges upon the federal court."  *Picard v. Connor*, 404 U.S. 270, 276 (1971).  The federal constitutional implications of a claim, not just issues of state law, must have been raised in the state court to achieve exhaustion.  *Ybarra v. Sumner*, 678 F. Supp. 1480, 1481 (D. Nev. 1988) (citing *Picard*, 404 U.S. at 276)).  To achieve exhaustion, the state court must be "alerted to the fact that the prisoner [is] asserting claims under the United States Constitution" and given the opportunity to correct alleged

1 violations of the prisoner's federal rights. *Duncan v. Henry,* 513 U.S. 364, 365 (1995); s*ee Hiivala*
2 *v. Wood,* 195 F.3d 1098, 1106 (9th Cir. 1999). It is well settled that 28 U.S.C. § 2254(b) "provides a
3 simple and clear instruction to potential litigants: before you bring any claims to federal court, be
4 sure that you first have taken each one to state court." *Jiminez v. Rice,* 276 F.3d 478, 481 (9th Cir.
5 2001) (quoting *Rose v. Lundy,* 455 U.S. 509, 520 (1982)).

6       A claim is not exhausted unless the petitioner has presented to the state court the same
7 operative facts and legal theory upon which his federal habeas claim is based. *Bland v. California*
8 *Dept. Of Corrections,* 20 F.3d 1469, 1473 (9th Cir. 1994). The exhaustion requirement is not met
9 when the petitioner presents to the federal court facts or evidence which place the claim in a
10 significantly different posture than it was in the state courts, or where different facts are presented at
11 the federal level to support the same theory. *See Nevius v. Sumner,* 852 F.2d 463, 470 (9th Cir.
12 1988); *Pappageorge v. Sumner,* 688 F.2d 1294, 1295 (9th Cir. 1982); *Johnstone v. Wolff,* 582 F.
13 Supp. 455, 458 (D. Nev. 1984).

14       **2. Application to the Instant Case**

15       In the first amended federal habeas petition, petitioner alleges in Ground 1(a) that
16 petitioner's counsel was ineffective due to a failure to investigate petitioner's mental state at the time
17 the crime was committed. (Docket #31, at pp. 12-19). Petitioner alleges that "[a]t the time of the
18 murder, Petitioner Rodius believed that his father was coming at him with an axe." (Docket #31, at
19 p. 14). Petitioner argues that this delusion would be sufficient to warrant an acquittal on the basis of
20 an insanity defense, pursuant to *Finger v. State*, 117 Nev. 548, 27 P.3d 66, 84-85 (2001). (Docket
21 #31, at p. 14). Petitioner also alleges in the amended federal petition that:

22     Petitioner's belief at the time he shot his father was that his father was coming at him
    with an axe. Thus, in his delusional state, Petitioner believed he was acting in self-
23     defense. Under *M'Naghten*, and under the example as given in *Finger v. State*, if the
    jury believed that he was in a psychotic state, Petitioner would have been entitled to
24     an acquittal.

25 (Docket #31, at p. 15).

26

On review of petitioner's appellate brief filed in the Nevada Supreme Court, petitioner did not raise the fact of the alleged delusion or hallucination that his father was coming at him with an axe and his alleged responding delusional act of self-defense. (Opening Brief, Petitioner's Exhibit 19; Respondents' Exhibit S). Rather, in his appellate brief, petitioner argues that his counsel's advice to plead guilty to second-degree murder was faulty because counsel failed to adequately investigate and advise him of a viable *Finger* defense of legal insanity or temporary legal insanity. Petitioner supported his legal theories, including the theory that there was a viable *Finger* defense of insanity, on the following facts: that counsel did not review the Henderson Detention Center and Clark County Detention Center medical records; that counsel did not contact or confer with Dr. Abasolo about his observations of petitioner's bizarre behavior in Mexico and pre-existing mental defect prior to the killing; and that counsel relied solely on Dr. Paglini's psychological report of petitioner. (State Appellate Brief, at Petitioner's Exhibit 19; Respondents' Exhibit S). Petitioner also argued that he was experiencing hallucinations and delusions that he was Jesus Christ and that his father was God and thus immune from harm. (*Id.*). However, the appellate brief presented to the Nevada Supreme Court does not contain any facts pertaining to petitioner having a delusion or hallucination that his father was coming at him with an axe and his responding delusional act of self-defense at the time of the killing (i.e., "the axe scenario"). (*Id.*). Additionally, the Nevada Supreme Court's order of affirmance contained no mention of facts or argument made by petitioner concerning a delusion or hallucination that his father was coming at him with an axe and his alleged responding delusional act of self-defense at the time of the killing. (Nevada Supreme Court Order filed January 9, 2007, at Respondents' Exhibit U and Petitioner's Exhibit 22).

In his reply brief, petitioner argues that the state district court's order denying the habeas petition mentioned and rejected an argument that petitioner's father had threatened him with an axe. (Docket #36, at p. 3). Petitioner also argues that the State's answering brief directed the Nevada Supreme Court to state habeas evidentiary hearing testimony in which petitioner's former

1  counsel, Mr. Christensen, discussed "the axe scenario." The State's answering brief references pages
2  140-226 of the transcript of the evidentiary hearing on petitioner's state habeas petition.
3  (Respondents' Exhibit T, State's Answering Brief, at p. 11). At pages 154-55 of the transcript of the
4  evidentiary hearing, petitioner's former defense counsel, Mr. Christensen, refers to petitioner's
5  allegation that his father came at him with an axe and the fact that there was no corroborating
6  evidence of this allegation. (Petitioner's Exhibit 12, Transcript of December 9, 2005 Proceedings, at
7  p. 154). A petitioner may not reply on his lower-court briefs and pleadings to present a federal claim
8  to the state's highest court. *Castillo v. McFadden*, 399 F.3d 993, 999-1000 (9th Cir. 2005) (citing
9  *Baldwin v. Reese*, 541 U.S. 27 (2004) (holding that petitioner cannot rely on state appellate court
10 reading the decision of a lower court to present federal claims).

11            Finally, petitioner asserts that the Nevada Supreme Court's order of January 9, 2007,
12 refers to the report of Dr. Paglini in connection with petitioner's argument that counsel was
13 ineffective for failing to fully investigate his mental state. The report prepared by Dr. Paglini
14 contained petitioner's account of the events surrounding the crime, including the statement that
15 petitioner reported that "[h]is father grabbed an axe and was engaged in a threatening gesture."
16 (Petitioner's Exhibit 14, at Exhibit A to Reporter's Transcript, Forensic Psychological Evaluation
17 (Report) of Dr. John Paglini, at p. 10). Although the Nevada Supreme Court did refer to Dr.
18 Paglini's report, it did not refer to the portion cited by petitioner. Rather, the Nevada Supreme Court
19 recited the fact that petitioner's counsel retained psychologist Dr. Paglini to assess petitioner.
20 (Nevada Supreme Court Order, at Respondents' Exhibit U, Petitioner's Exhibit 22, at p. 3). The
21 Nevada Supreme Court noted that Dr. Paglini made findings that petitioner was competent,
22 concluded that petitioner was depressed but not otherwise mentally ill, and that the killing was likely
23 an impulsive act resulting from drug-induced psychosis. (*Id.*). The Nevada Supreme Court did not
24 refer to the portion of Dr. Paglini's report concerning petitioner's statement regarding his father

having an axe. The fact that the Nevada Supreme Court mentioned the Paglini report in its decision does not render the "axe scenario" issue exhausted.

For the reasons discussed above, this Court finds that petitioner did not fairly present the facts and legal theory of petitioner's claim of having a delusion or hallucination that his father was coming at him with an axe and his responding delusional act of self-defense to the Nevada Supreme Court. All portions of the amended federal petition concerning petitioner's claim of having a delusion or hallucination that his father was coming at him with an axe and his responding delusional act of self-defense are dismissed for failure to exhaust the issue in state court.

In his reply to the answer, petitioner takes the following position: "In the event that this Honorable Court finds that any claim is unexhausted, Petitioner elects to proceed with his petition before this Honorable Court and will abandon any unexhausted claim.[2] (Docket #36, at p. 2, n.1). Therefore, the Court accepts petitioner's abandonment of the "axe-scenario" claim, and will proceed to analyze the merits of the remaining claims in the amended petition.

**B. Ground One**

In Ground One, petitioner alleges that his right to the effective assistance of counsel was violated due to counsel's failure to adequately investigate petitioner's mental state, and as a result, petitioner's guilty plea was not entered into knowingly, intelligently, and voluntarily. (First Amended Petition, Docket #31, at pp. 12-20). Petitioner details counsel's alleged failure to adequately investigate petitioner's mental state. (Docket #31, at p. 12-19). Petitioner alleges that his counsel failed to investigate incidents in Mexico that occurred prior to the crime in Las Vegas, including contacting Mexican physician Dr. Abasolo, who treated petitioner in Mexico. Petitioner alleges that counsel erred in solely relying on Dr. Paglini's psychological evaluation. Petitioner alleges that counsel failed to obtain medical records from the Henderson Detention Center and the

---

[2] Also in the reply brief, petitioner requests oral argument prior to any determination that he has failed to exhaust a claim. (Docket #36, at p. 2, n.1). Petitioner's request for oral argument is denied.

9

Clark County Detention Center, which showed that petitioner took psychotropic medications, including Haldol, Prozac, Cogentin, Trazadone, and Vestaril. Petitioner contends that, if counsel had not failed to adequately investigate petitioner's mental state, counsel wold have realized that petitioner had a viable insanity defense under *Finger v. State*, 117 Nev. 548, 27, P.3d 66 (2001). Petitioner alleges that he suffered prejudice due to counsel's ineffectiveness, because, if not for counsel's alleged errors, petitioner would not have pleaded guilty. (Docket #31).

Under *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner must show, first, that counsel's representation fell below an objective standard of reasonableness, based on prevailing professional norms. *Id.* at 688-90. Second, the petitioner must demonstrate that the identified acts or omissions of counsel prejudiced his defense. He must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The application of the *Strickland* test where ineffectiveness of counsel is alleged to invalidate a plea has been defined as follows:

> [T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel. In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence already set forth in *Tollett v. Henderson, supra*, and *McMann v. Richardson, supra*. The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill v. Lockhart*, 474 U.S. 52, 58 (1985). The modified *Strickland* prejudice standard in guilty plea cases asks whether there is a probability that, but for counsel's alleged errors, defendant would not have pleaded guilty, but would have insisted on going to trial. *Langford v. Day*, 110 F.3d 1380, 1387 (9th Cir. 1997).

On petitioner's appeal from the denial of his state habeas petition, the Nevada Supreme Court denied petitioner's claims, as follows:

> Rodius also argues the district court erred in denying his claim that counsel were ineffective for failing to investigate his mental state. He argues that if counsel had obtained his records from the Henderson jail and Clark County Detention Center, they would have discovered that the victim, Rodius's father, punched Rodius sometime before killing him. He claims this would have assisted him in arguing the killing was in self-defense. He also claims counsel should have spoken to Dr. Abasolo, a physician who treated Rodius in a Mexican hospital after a psychotic episode that immediately preceded the killing. Rodius claims that Dr. Abasolo's opinion that Rodius had a mental illness would have strengthened an insanity or temporary insanity defense.
>
> At the evidentiary hearing, Mr. Christensen [counsel] testified that he discussed Rodius's mental health issues and the incident in Mexico with Rodius. He reviewed Rodius's mental health issues and the incident in Mexico with Rodius. He reviewed Rodius's records from the Mexican hospital. He hired Dr. Paglini, a psychologist, to assess Rodius's competency and for analysis of a possible insanity defense. Dr. Paglini found that Rodius was competent and concluded that Rodius was depressed but not otherwise mentally ill. Dr. Paglini concluded that the killing was likely an impulsive act resulting from drug-induced psychosis. Dr. Paglini's report included his conversations with Rodius's family members; two of them were very sympathetic to Rodius, and none of them indicated he had a history of mental illness.
>
> Mr. Christensen also testified that an insanity defense was difficult to prove. He testified that no one could corroborate Rodius's claim that he shot his father in self defense. He also testified that a self-defense claim was hindered by Rodius's threats to kill his parents and his pointing a gun at his brother and threatening to shoot him just before shooting their father. Mr. Christensen further testified that the State had offered a negotiated plea of second-degree murder with the use of a deadly weapon and that he was not confident Rodius would do better than that at trial because he felt many jurors were not sympathetic to defendants who were psychotic due to their voluntary drug use. Mr. Christensen testified that he discussed all these issues with Rodius and Rodius seemed to understand them.
>
> Mr. Amundsen [counsel] testified that he knew Rodius had mental health issues and had discussed them, including the Mexico incident, with Rodius. He reviewed the Mexican hospital records. He did not believe Rodius could successfully assert an insanity defense, and he discussed this with Rodius.
>
> We conclude that the district court did not err in concluding that counsel were effective. Our review of the record indicates that if counsel had obtained the records at issue, they would only have learned that Rodius told Henderson jail staff that his father punched him. Rodius failed to demonstrate that he was unable to tell his counsel this. He also failed to demonstrate that this would have changed counsel's analysis and advice and that he therefore would not have pleaded guilty. Similarly, Rodius failed to demonstrate that Dr. Abasolo's opinion that Rodius had a mental illness would have changed counsel's analysis or advice and that he therefore would

11

>have not pleaded guilty. Dr. Abasolo was not a psychologist or psychiatrist, he treated Rodius for less than two days, and his opinion was contradicted by Dr. Paglini, an expert whom counsel hired on Rodius's behalf. Accordingly, we conclude that the district court did not err in denying this claim.

(Nevada Supreme Court Order, at Respondents' Exhibit U; Petitioner's Exhibit 22, at pp. 2-4). The factual findings of the state court are presumed correct. 28 U.S.C. § 2254(e)(1). Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Counsel's performance did not fall beyond an objective standard of reasonableness under prevailing norms. Nor has petitioner satisfied the prejudice prong of the *Strickland* analysis, as he has not shown that, but for the alleged errors of counsel, that he would have not pleaded guilty and that he would have insisted on going to trial. As such, this Court will deny habeas relief with respect to Ground One.

### C. Ground Two

In Ground Two, petitioner claims that his guilty plea was not entered knowingly, intelligently, or voluntarily, because the medications he taking at the time he entered his guilty plea rendered him incompetent. Petitioner claims that he would not have pleaded guilty if trial counsel had not allowed him to enter a plea while he was incompetent. Petitioner alleges that his counsel failed to investigate his competency, that his counsel incorrectly certified that petitioner was not under the influence of drugs at the time he signed the plea agreement, that counsel did not tell the court that petitioner was on medication at the plea hearing, and that the trial court failed to canvass him regarding whether he was on medications. (Amended Petition, Docket #31, at pp. 20-26).

In determining whether a person is competent to stand trial, "the test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402 (1960). "[E]vidence of a defendant's irrational

behavior, his demeanor at trial, an any other prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required . . . ." *Drope v. Missouri*, 420 U.S. 162, 180 (1975). "When analyzing competence to plea guilty, we look to whether a defendant has the ability to make a reasoned choice among the alternatives presented to him." *Miles v. Stainer*, 108 F.3d 1109, 1112 (9th Cir. 1997) (internal quotation and citation omitted). This standard is no higher than the *Dusky* standard for competence to stand trial. *Id.* (citing *Godinez*, 509 U.S. at 402). "In reviewing whether a state trial judge should have sua sponte conducted a competency hearing, we may consider only the evidence that was before the trial judge." *Davis v. Woodford*, 333 F.3d 982 (9th Cir. 2003).

The Nevada Supreme Court considered petitioner's claims regarding competency, on appeal from the denial of his state habeas petition, as follows:

> Rodius argues that the district court erred in denying his claim that his counsel were ineffective for allowing him to plead guilty while he was incompetent due to being medicated with the psychotropic drugs Haldol, Prozac, and Cogentin and for failing to advise the court at the plea canvass that he was being medicated. Rodius failed to demonstrate that had counsel so advised the district court, he would not have pleaded guilty and would have insisted on going to trial. Our review of the record reveals that Rodius's responses to the plea canvass were coherent and appropriate. Mr. Amundsen testified that he knew Rodius was being medicated, that he never had difficulty talking with Rodius, and that Rodius seemed to understand what was happening. Accordingly, we conclude the district court did not err in denying this claim.

(Respondents' Exhibit U; Petitioner's Exhibit 22, at p. 2). The factual findings of the state court are presumed correct. 28 U.S.C. § 2254(e)(1). Petitioner has not shown that the Nevada Supreme Court's decision was objectively unreasonable. Both defense counsel testified at the evidentiary hearing on petitioner's state habeas petition that petitioner had sufficient ability to consult with them, had a reasonable degree of rational understanding, and had a rational and factual understanding of the proceedings against him. They both testified that they had no problem communicating with petitioner, that he understood what was going on at the preliminary hearing, took part in and

1  understood the options involved in entering the plea or going to trial, and was responsive to every
2  question. (Petitioner's Exhibit 12, at pp. 166-171, pp. 176-178, pp. 209-210, and pp. 213-215).
3  Moreover, Dr. Paglini's November 3, 2003 report states that when he interviewed
4  petitioner on October 28, 2003, petitioner denied psychosis for the last six to seven months, and
5  reported that petitioner was currently on Haldol, Cogentin, and Prozac. (Petitioner's Exhibit 14, Dr.
6  John Paglini's Forensic Psychological Evaluation, at p. 5). Petitioner was taking these same drugs at
7  the time he entered his plea. Dr. Paglini reported that Mr. Rodius "was alert, oriented times four and
8  cooperative." (Petitioner's Exhibit 14, Dr. John Paglini's Forensic Psychological Evaluation, at p.
9  3). Dr. Paglini also reported that "Mr. Rodius was able to recall the last four presidents of the United
10 States. He also recalled three objects after a thirteen-minute delay. Mr. Rodius's thought processes
11 were logical and goal oriented. Thought content was appropriate to issues discussed, and not
12 reflective of delusional quality." (Petitioner's Exhibit 14, Dr. John Paglini's Forensic Psychological
13 Evaluation, at p. 3). Dr. Paglini's report corroborates defense counsels' observations and belies
14 petitioner's claim that his plea was not knowing, intelligent, and voluntary.
15 Petitioner argues that counsel Amundsen falsely certified in the guilty plea agreement
16 that petitioner was not under the influence of drugs at the time he signed it. The record shows that
17 Amundsen was mistaken regarding the fact that his client was taking prescribed medication.
18 However, petitioner's signed guilty plea agreement provided that he was not under the influence of
19 any controlled substance or other drug which would in any manner impair his ability to comprehend
20 or understand the agreement or the proceedings surrounding his entry of plea. (Respondents' Exhibit
21 D). Moreover, the Nevada Supreme Court found that "a review of the record reveals that Rodius's
22 responses at the plea canvass were coherent and appropriate." (Order, at Respondents' Exhibit U,
23 Petitioner's Exhibit 22, at p. 2). The Nevada Supreme Court's findings are presumed correct and is
24 entitled to deference. 28 U.S.C. § 2254(e)(1). Petitioner has failed to meet his burden of proving
25 that the ruling of the Nevada Supreme Court was contrary to, or involved an unreasonable
26

application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This Court will deny habeas relief as to Ground Two.

### D. Ground Three

In Ground Three, petitioner repeats his allegations of ineffective assistance of counsel and resulting prejudice. (Amended Petition, Docket #31, at pp. 26-29). The argument does not differ from the arguments presented to the Nevada Supreme Court and to this Court in Grounds One and Two. As discussed previously in this order, the Court rejects petitioner's arguments in Grounds One and Two, which are the same arguments presented in Ground Three. Petitioner has failed to meet his burden of proving that the ruling of the Nevada Supreme Court was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This Court will deny habeas relief as to Ground Three.

## IV. Certificate of Appealability

In order to proceed with any appeal, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.*

Pursuant to the December 1, 2009 amendment to Rule 11 of the Rules Governing Section 2254 and 2255 Cases, district courts are required to rule on the certificate of appealability in the order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a notice of appeal and request for certificate of appealability to be filed. Rule 11(a). This Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard. The Court will therefore deny petitioner a certificate of appealability.

**V. Conclusion**

**IT IS THEREFORE ORDERED** that the amended petition for a writ of habeas corpus (Docket #31) is **DENIED IN ITS ENTIRETY**.

**IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF APPEALABILITY.**

**IT IS FURTHER ORDERED** that the Clerk **SHALL ENTER JUDGMENT ACCORDINGLY.**

DATED: September 9, 2010

_____
UNITED STATES DISTRICT JUDGE